<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ERIC EPPS, | No. 21cv16719 (EP) |
| Petitioner, | **OPINION** |
| v. | |
| ROBERT CHETIRKIN, *et al*., | |
| Respondents. | |

**PADIN, District Judge.**

*Pro se* Petitioner Eric Epps ("Epps"), a convicted and sentenced New Jersey state prisoner, brings a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 against Respondents Robert Chetirkin and the Attorney General of the State of New Jersey ("Respondents"), challenging his amended judgment of conviction and sentence in the Superior Court of New Jersey, Essex County.[1]  D.E. 5 ("Petition" or "Pet.").  For the reasons below, the Court will **DENY** the Petition and **DENY** a certificate of appealability.

## I.      BACKGROUND

Epps seeks habeas relief under 28 U.S.C. § 2254 from his convictions for sexual assault, endangering the welfare of a child, and lewdness, for which he is serving a 15-year aggregate prison term, subject to 85% parole ineligibility, and subsequent parole supervision for life.  Pet. at 1.  On habeas review, district courts must presume the state court factual findings are correct, rebuttable by the petitioner with clear and convincing evidence.  § 2254(e)(1).  The Court, therefore, begins with the factual findings of the New Jersey Superior Court, Appellate Division

---

[1] *State v. Epps*, Change of Judgment of Conviction & Order for Commitment.  D.E. 12-5.

on Epps' direct appeal of his convictions and sentence.  *See State v. Epps*, No. A-4094-14T1, slip op., at \*2 (N.J. Super. Ct. App. Div. June 8, 2017) (per curiam).

Epps was charged by indictment in Essex County, New Jersey, with second-degree sexual assault (count one), in violation of N.J. Stat. Ann. § 2C:14-2(b)[2]; three counts of third-degree endangering the welfare of a child (counts two through four), in violation of N.J. Stat. Ann. § C:24-

---

[2] The New Jersey Supreme Court defined the elements of "tender-years-sexual-assault[,]" relevant here:

> [w]hen the controlling statutory provisions of the Code are read together, [the New Jersey Supreme Court held] that a tender-years-sexual assault under N.J.S.A. 2C:14–2b contains three key elements. They are: (1) a victim who is less than thirteen years old, (2) a defendant-actor who is at least four years older than the victim, and (3) a sexual contact with a victim under the critical age. The sexual contact with a victim involves an intentional or purposeful touching of an intimate part. There are three types of intentional sexual touchings: the actor may touch himself or herself, the actor may touch the victim, or the victim may touch the actor. Each such intentional touching must be for at least one of four purposes: either degrading or humiliating the victim, or sexually arousing or sexually gratifying the defendant-actor. Finally, if the touching is by the actor of himself or herself, the sexual touching must be in view of the victim whom the actor knows to be present.

*State v. Zeidell*, 154 N.J. 417, 428 (1998); s*ee State v. Breitweiser*, 373 N.J. Super. 271, 276 (App. Div. 2004) (holding the phrase "in the view" used by the *Zeidell* Court included a "reasonable risk that the underage child might view the act"); *State v. Jones*, 224 N.J. 70, 98 (N.J. 2016) ("*Zeidell* recognized that the key distinction between lewdness and sexual assault was the difference between mere exposure of an intimate part and the sexual touching of that part.").

4(a);[3] and fourth-degree lewdness (count five), in violation of N.J. Stat. Ann. § 2C:14-4(b)(l).[4] *Id.* at 2.

On May 2, 2013, at approximately 3 p.m., a twelve-year old girl and her eleven-year old and eight-year old brothers were walking home from their school bus stop in East Orange, New

---

[3] N.J. Stat. Ann. § 2C:24-4(a):

> Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child, or who causes the child harm that would make the child an abused or neglected child as defined in R.S.9:6-1, R.S.9:6-3 and P.L.1974, c. 119, s.1 (C.9:6-8.21) is guilty of a crime of the second degree. Any other person who engages in conduct or who causes harm as described in this subsection to a child under the age of 16 is guilty of a crime of the third degree.

[4] N.J. Stat. Ann. § 2C:14-4(b), (c):

> A person commits a crime of the fourth degree if:
>
> (1) He exposes his intimate parts for the purpose of arousing or gratifying the sexual desire of the actor or of any other person under circumstances where the actor knows or reasonably expects he is likely to be observed by a child who is less than 13 years of age where the actor is at least four years older than the child.
>
> (2) He exposes his intimate parts for the purpose of arousing or gratifying the sexual desire of the actor or of any other person under circumstances where the actor knows or reasonably expects he is likely to be observed by a person who because of mental disease or defect is unable to understand the sexual nature of the actor's conduct.
>
> c. As used in this section:
>
> "lewd acts" shall include the exposing of the genitals for the purpose of arousing or gratifying the sexual desire of the actor or of any other person.

Jersey. *Id.* at 3. They walked by a parked green Jeep[5] with its windows rolled down. *Id.* The girl and the older boy saw Epps masturbating in the driver's seat. *Id.* Epps was not wearing pants, but had a towel around his waist. *Id.* at 4. When they saw this, the older boy was shocked, and the younger boy said "that's nasty." *Id.* Epps grinned at the children. *Id.*

The girl told the younger boy to write the Jeep's license plate number on his homework paper. *Id.* The children walked to a nearby fire station and reported what they saw and Epps drove away. *Id.* Police escorted the children to the police station, and they provided the license plate number. *Id.* East Orange Detective Phillip Rodriguez determined the car was registered to Epps. *Id.*

The girl returned to the police station five days later to identify Epps. *Id.* Detective Rodriguez prepared a photo array with Epps' photo and five other photos of physically similar individuals. *Id.* Detective Sharif Greenwood testified that he displayed the photo array and the girl identified Epps' photograph as the individual she had seen masturbating in the Jeep. *Id.* In her words, the photograph "kind of looked like the suspect," but she believed the suspect's skin was "a little darker." *Id.*

At trial, defense counsel cross-examined the girl on her previous encounters with a man she thought was the defendant. *Id.* at 4-5. The girl testified that the person she saw in the green Jeep on May 2, 2013, had been following her and her brothers during the prior year. *Id.* at 5. She had seen "this person" before at the bus stop and at her grandmother's house in Newark. *Id.* She also told police that the man she saw in the green Jeep had been driving around her house in a red Jeep. *Id.* Sometimes the man was naked, and sometimes he was masturbating. *Id.* The girl felt

---

[5] The green "Jeep" is variously referred to throughout the record as "green truck" and "green vehicle" because, although the child witnesses called it a Jeep, it was a Ford Explorer.

uncomfortable. *Id.* Her parents told her to get the license plate number from the Jeep if she saw it again. *Id.*

The State objected to defense counsel's cross-examination of the girl on the details of Epps' uncharged conduct from the prior year. *Id.* Defense counsel argued the girl's previous observations of the man in the red Jeep were relevant because they led to her identification of Epps' photograph. *Id.* At the close of the State's case, the prosecutor requested a limiting instruction under N.J.R.E. 404(b).[6] Defense counsel objected because "it would be unduly prejudicial" in light of Epps' intended testimony and lengthy criminal history. *Id.* The trial court reserved the ruling. *Id.*

Epps took the stand and first testified about his prior criminal history. *Id.* at 6. Then, he testified about the events on May 2, 2013. *Id.* At 7:00 a.m., he drove his fiancée to work in West Orange in his green 1996 Ford Explorer. *Id.* At approximately 3:00 p.m., he stopped at a corner store in East Orange. *Id.* He parked in the location where the children said they saw him. *Id.* He entered the store and left shortly after purchasing a few items. *Id.* He saw some children outside the store, but denied seeing the girl and her brothers or that he was masturbating or naked in the driver's seat. *Id.* He was headed to West Orange to give his fiancée a ride from work. *Id.* Epps

---

[6] Rule 404(b) provides:

> (b) Other Crimes, Wrongs, or Acts.
>
> (1) Prohibited Uses. Except as otherwise provided by Rule 608(b), evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition.
>
> (2) Permitted Uses. This evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute.

also testified that he was incarcerated between October 22, 2010 and December 2, 2012. *Id.* The State stipulated to the date of Epps' release from custody. *Id.*

During the charge conference, defense counsel objected to the court giving a 404(b) limiting instruction. *Id.* at 5. The court never gave the charge. *Id.* at 6.

In summation, defense counsel argued the children had mistaken Epps for the man they saw in the red Jeep on prior occasions, because Epps was in prison most of the prior year. *Id.* at 6. Defense counsel also argued they were mistaken about what Epps was doing when they saw him in the green Jeep. *Id.* at 6-7. After a jury trial, Epps was acquitted of two endangering offenses (counts three and four) and convicted of the remaining crimes. *Id.* at 2-3.

The State moved to have Epps sentenced as a persistent offender under N.J. Stat. Ann. § 2C:44-3(a). D.E. 12-38 at 3 ("Sentencing Tr."). The trial court granted the motion and sentenced Epps to an aggregate seventeen-year prison term subject to the No Early Release Act ("NERA"), N.J. Stat. Ann. § 2C:43-7.2(a), ordered Epps to comply with the reporting and registration requirements of Megan's Law,[7] and sentenced him to parole supervision for life following his release from prison and mandatory financial assessments. *Id.* at 24-26.

The Appellate Division denied Epps' direct appeal on June 8, 2017. *Epps*, No. A-4094-14T1, slip op. (N.J. Super. Ct. App. Div. June 8, 2017). The New Jersey Supreme Court denied Epps' petition for certification. *State v. Epps*, No. 079576, slip. op. (N.J. Nov. 17, 2017).

On May 15, 2018, Epps sought post-conviction relief ("PCR"). D.E. 12-13 ("Verified Pet. for PCR Relief"). The PCR court granted an evidentiary hearing on Epps' claim that trial counsel was ineffective for incorrectly advising him as to sentencing consequences and denied the remainder of his claims. *State v. Epps*, Indictment No. 14-02-0397I, slip op. (N.J. Super. Ct. Law

---

[7] New Jersey's Registration and Community Notification Act, N.J.S.A. 2C:7–1 *et seq.*

Div. June 7, 2019).  Epps withdrew his remaining ineffective assistance of counsel claim without an evidentiary hearing.  *Id.* The Appellate Division affirmed the denial of the PCR petition.  *State v. Epps*, No. A-5692-18, slip op. (N.J. Super. Ct. App. Div. Mar. 10, 2021).  The New Jersey Supreme Court denied Epps' petition for certification.  *State v. Epps*, No. 085588, slip op. (N.J. June 21, 2021).  Therefore, the Petition is ripe for review.

## II.    ANALYSIS

### A.    Habeas Standard of Review

"[B]efore a federal court may consider the merits of a § 2254 habeas petition, an inmate ordinarily must exhaust the state-court remedies for the claimed violation of federal law." *Ross v. Adm'r E. Jersey State Prison*, 118 F.4th 553, 562 (3d Cir. 2024) (cleaned up); *see* 28 U.S.C. § 2254(b)(1)(A), (b)(1)(B) (enumerating exceptions).  A petitioner exhausts state court remedies by fairly presenting the factual and legal basis of his federal law claims to the trial court, and the state's intermediate and supreme court.  *Id.* at 564 (citing 28 U.S.C. § 2254(b), (c)).  State court remedies are exhausted when they are no longer available.  *Id.* at 565 (citing *Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006)).

When state court remedies are no longer available, "the claim may still be subject to dismissal on procedural-default grounds[.]" *Id.*  For a procedural default to occur, the state court rule must provide an "adequate" basis for the court's decision and the decision must be "independent of the merits of the federal claim." *Id.*  "Ordinarily, for procedural default, a state-court decision must contain a plain statement that its ruling rests on such an adequate and independent state-law ground." *Id.* (cleaned up).  In the absence of a recognized excuse for the procedural default, a habeas court may not review the merits of the procedurally defaulted federal claim. *Id.*

A petitioner can avoid procedural default by showing "cause and prejudice." *Id.* "Cause" requires showing that there was an "objective reason" the petitioner could not comply with the procedural rule. *Id.* at 565-66. Prejudice means actual prejudice, "that the constitutional violation worked to his actual and substantial disadvantage." *Shinn v. Ramirez*, 596 U.S. 366, 379-80 (2022) (cleaned up). A "fundamental miscarriage of justice" is another exception for procedural default, and it requires a plausible showing of actual innocence. *Id.* at 566, n.5.

If a state court has decided a federal claim on the merits, habeas relief is generally available "only if the state court relied on an unreasonable determination of the facts or unreasonably applied clearly established Federal law, as determined by" the Supreme Court. *Andrew v. White*, 145 S. Ct. 75, 80 (2025) (per curiam) (cleaned up); 28 U.S.C. § 2254(d)(1), (2). Clearly established federal law "means holdings, not dicta," of the Supreme Court. *Id.* (cleaned up). The applicable clearly established federal law is determined at the time of the state court's decision. *Id.* An unreasonable application "is one with which no fairminded jurist would agree." *Id.* (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). A petitioner may also "demonstrate that Supreme Court precedent requires a contrary outcome to the state court decision." *Spanier v. Dir. Dauphin Cnty. Prob. Servs.*, 981 F.3d 213, 228 (3d Cir. 2020) (cleaned up). A contrary outcome is required when "[t]here can be no possibility for fairminded disagreement." *Id.* (cleaned up).

In situations where the highest state court denied relief on a federal claim without an explanatory opinion, "federal habeas law employs a 'look through' presumption." *Wilson v. Sellers*, 584 U.S. 122, 128 (2018). The presumption applies "[w]here there has been one reasoned state judgment rejecting a federal claim" and assumes "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Id.* at 129 (cleaned up). The presumption "may be overcome when there is reason to think some other explanation for the state

court's decision is more likely." *Id.* at 131 (cleaned up).  Furthermore, habeas review "does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98.  In such cases, habeas relief is only proper where no fairminded jurist could agree with the state court's decision. *Id.* at 101.  When a petitioner has satisfied the demanding standard of § 2254(d), a habeas court must then determine whether "law and justice" require relief. *Brown v. Davenport*, 596 U.S. 118, 134 (2022).  At a minimum, this requires a habeas court to apply Supreme Court precedent governing equitable discretion, such as the harmless error doctrine announced in *Brecht v. Abrahamson*, 507 U.S. 619 (1993). *Id.*

**B.    Ground One of the Petition**

Ground One of the Petition contains two parts.  Pet. at 6-7.  The Court will refer to the prosecutorial misconduct claim as Ground One(a) and the evidentiary claim under Rule 404(b) as Ground One(b).

*1.    Ground One(a)*

In Ground One(a), Epps argues:

> The Indictment Should Be Dismissed Because The State Relied On Inconsistent Testimony Knowing It Was Contrary To The Facts And Failed To Correct It Thereby Failing To Establish All Of The Required Elements Of Sexual Assault.

*Id.* at 6.

In support of this claim, Epps submits the following facts.  In her direct examination, Z.P. testified she had never seen the man in the green Jeep before May 2, 2013. *Id.*  The prosecutor referred to Z.P.'s out-of-court statement to elicit her testimony that she told police she had seen the man in the green Jeep on prior occasions in a red Jeep. *Id.* at 6(a).  On some of those occasions, he was masturbating. *Id.* at 6(a).  According to Epps, the prosecutor knew Z.P.'s testimony was false because she had twice told police that she had not seen Epps' "private part." *Id.* at 6(c).

Additionally, Epps challenges the prosecutor's use of leading questions to elicit testimony inconsistent with Z.P.'s out-of-court statement. *Id.* The prosecutor used the words "penis" and "masturbating," which were not the words Z.P. used when she spoke to police after the incident. *Id.* at 6(b), (c). Epps contends Z.P.'s testimony was essential to the superseding indictment for sexual assault. *Id.* at 6(c). Because the jury did not "know all the facts effecting [sic] Z.P.'s credibility," Epps contends the State did not establish all elements of sexual assault beyond a reasonable doubt. *Id.*

Respondents oppose relief on Ground One(a). D.E. 12 ("Answer") at 18. The PCR court, affirmed by the Appellate Division, found the jury was presented with sufficient evidence to convict on sexual assault. *Id.* at 18-19. Respondents contend Epps cannot demonstrate the state court rulings involved an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Id.* at 19. In his reply brief, Epps reiterated Ground One(a) of the Petition. D.E. 13 at 10-13 ("Reply").

a.    *State court determination*

Habeas Review is of the highest reasoned state court determination of the claim. *See Wilson*, 584 U.S. at 125 (explaining the "look through" analysis when the last state court to decide the petitioner's federal claim did not provide reasons). The New Jersey Supreme Court denied Epps' petition for certification without providing reasons. *Epps*, No. 079576 (Nov. 15, 2017). The Appellate Division affirmed the PCR court "substantially for the reasons given in the PCR Court's cogent decision[,]" but made additional findings of facts:

> The State called Z.P. as a witness. She stated she was sure defendant was the man in the green Jeep because she was walking very close to the vehicle and she could clearly see his face through the open window.

> On cross-examination Z.P. confirmed she told the detectives in her statement several days after the incident that she had seen defendant several times during the prior year. At those times, defendant was driving a red Jeep and she saw him on her street and in front of her house. Defendant was not wearing pants and was masturbating each time Z.P. saw him.
>
> . . .
>
> It is clear from our review of the transcript that defense counsel extracted Z.P.'s prior observations during her cross-examination. The testimony was designed to show that Z.P. claimed to have seen defendant in two different vehicles and to question her identification of defendant on the day in question. The lengthy cross-examination about the details of the prior encounters was clearly designed to create doubt about Z.P.'s version of the events for which defendant was charged.
>
> Indeed, when defendant testified, counsel stipulated he was in prison for a period of the time Z.P. claimed to have seen him masturbating in a red Jeep and he never owned a red vehicle.

*State v. Epps*, No. A-4049-14T1, slip. op, at *8-9. The Appellate Division did not specifically address the prosecutorial misconduct claim, and rejected "any remaining arguments" because they were of insufficient merit to warrant discussion in a written opinion. *Id.* at 10-11. Thus, the Court will "look through" to the PCR court's reasoning.

The PCR court, quoting state law, stated "[r]eversal is warranted when the prosecutor's conduct "substantially prejudice[s] the defendant's fundamental right to a fair trial." *Epps*, Indictment No. 14-02-0397I, slip op., at *7 (N.J. Super. Ct. Law Div. June 7, 2019). Applying this rule, the PCR Court found: (1) the State turned over the children's videotaped statements and was not required to introduce them into evidence; (2) the State produced sufficient evidence, the testimony of two children who identified him, "to meet the elements of the offenses that Epps was convicted of by the jury[;] and (3) "the State produced several witnesses, two of [whom] testified

seeing Epps commit some of the offenses that he was charged with.  *Id.* at 9-10.  The PCR court concluded "Epps is unable to show the State argued anything but the evidence at trial, or that any impermissible inferences were drawn therefrom."  *Id.* at 10.

            b.       *Analysis of Ground One(a)*

The Court must identify the clearly established Supreme Court holding applicable to the federal claim alleged.  The Supreme Court in *Napue v. People of State of Ill.*, 360 U.S. 264 (1959) held that a conviction obtained through a State's knowing use of false evidence, or the State's failure to correct false testimony, whether the falsehood bore upon the witnesses' credibility or guilt, violates the Due Process Clause of the Fourteenth Amendment.  *Id.* at 269.

Here, the trial court record shows the State did not knowingly present false testimony or allow false testimony to go uncorrected regarding Z.P.'s credibility or Epps' guilt.  The following colloquy occurred on direct examination of Z.P. by the prosecutor.

> Q:  … did you observe anything unusual that day?
>
> A:  Yes.
>
> Q:  Would you describe for me what you saw?
>
> A:  A man playing with himself.
>
> Q: Okay, Now, when you say playing with himself, describe for me exactly what you saw.
>
> A:  A man playing with his penis.
>
> Q:  Okay.  And could you exactly see his penis?
>
> A:  Yes.
>
> Q:  Okay.  And when you say playing with it, what was he doing to his penis?
>
> A:  Masturbating.

> Q:  Okay. Specifically when you say masturbating, he was touching his penis with his hand?
>
> A:  Yes.
>
> Q:  Is that what you saw?
>
> A:  Yes.

D.E. 12-33 at 43 ("1T").

Z.P. also testified the man did not have pants on and she only saw a towel around his waist. *Id.* at 43-44.  The record shows the prosecutor did not ask Z.P. leading questions to elicit this testimony.

Z.P. also testified that she got a good look at the person's face.  *Id.* at 47.  The prosecutor inquired, "Had you ever seen that person before?"  *Id.*  Z.P. said "No."  *Id.*  The examination continued:

> Q:  The person you saw masturbating in the vehicle on May 2nd 2013, had you ever before seen that person?
>
> A:  What do you mean by that?
>
> Q:  Was that like the first time you ever saw that person?
>
> A:  Like him period.
>
> Q:  Uh-huh.
>
> A:  Yes.
>
> [Defense Counsel]:  I'm sorry.  I didn't hear the answer.
>
> A:  That was the first time I ever saw the person.
>
> . . .
>
> Q:  [Z.P.] do you recall giving a statement to the police about what – – about what you saw that day?
>
> A:  Yes.

. . .

> Q:  Okay.  Do you recall if you told the detectives that you talked to that day that you saw that person before?
>
> A:  Yes.
>
> Q:  Okay.  Did you tell the detective that you saw that person before?
>
> A:  Yes, in a different car.
>
> Q:  Okay.  But you had seen his face before?
>
> A:  Yes.
>
> Q:  Okay, and do you remember now that it wasn't the first time that you saw him?
>
> A:  Yes.

*Id.* at 47-49.

As this colloquy shows, the prosecutor did not allow Z.P.'s inconsistent testimony to go uncorrected.  The jury was able to consider whether Z.P.'s inconsistent testimony affected her credibility.

In support of his allegation that Z.P. told the detectives in her out-of-court recorded statement that she had not seen the man's private part, Epps cites to the "Statement of Minor Z.P. Vol. 1."  Pet. at 6(c); Reply at 11 n.5.   He contends the prosecutor failed to correct Z.P.'s inconsistent testimony at trial.  Pet. at 6(c).  Upon the Court's review of the record, "Statement of Minor Z.P. Vol. 1" was not introduced as evidence at trial, nor submitted on direct appeal, nor submitted in the PCR proceedings.  This is significant because "review under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181, (2011); *see* § 2254(d)(1) (limiting habeas relief on "any

claim that was adjudicated on the merits in State court proceedings" to state court decisions that

were "contrary to, or involved an unreasonable application of, clearly established Federal law…")

Epps presented this claim in the PCR court in the following manner:

> POINT IV: PROSECUTORIAL MISCONDUCT.
> PROSECUTION WITHHELD THE VIDEOTAPED VERSIONS
> OF THE THREE VICTIM'S SWORN STATEMENTS,
> PREVENTING INSPECTION BY THE TRIAL JUDGE AND THE
> TRIAL JURY. THEY WERE ALSO PREVENTED FROM
> INSPECTING THE WRITTEN VERSIONS OF THESE
> STATEMENTS MARKED: [S-28], [S-29]. [S-30], AND [S-31].

Verified Pet. for PCR Relief at 5.

The PCR Court denied the claim as follows:

> Epps' claim is that the state withheld the videotaped versions of the
> three victims' sworn statements from the trial judge and jury. Epps
> does not cite any authority holding that the State is obligated to
> introduce these videotapes as evidence. The State is obligated to
> turn over exculpatory discovery to the defense pursuant to <u>Brady</u>.
> Defense counsel, in consultation with the client, must then decide
> whether to introduce such evidence.
>
> At trial, defense counsel did [c]ross-[e]xamine the twelve-year old
> female victim about the videotaped statements. Defense counsel
> pointed out potential inaccuracies in the witness's account.
> Introducing the videotaped statements is a strategic decision which
> the defense declined to do. Epps does not allege a constitutional
> violation. Instead Epps alleges prejudice because the jury did not
> see something that the Defense opted not to introduce. Epps cannot
> show that if the jury saw the videotaped statements the outcome
> would have been different under <u>Strickland</u>. Consequently, Epps is
> unable to show that he was prejudiced by any alleged prosecutorial
> misconduct.

*Epps*, Indictment No. 14-02-0397I, slip. op. at *10-11 (N.J. Super. Ct. Law Div. June 7, 2019).

The trial transcript shows that defense counsel did not question Z.P. about whether she told

detectives that she had not seen the man's "private part." 1T at 63-126.

Furthermore, Detective Rodriguez's testimony contradicts Epps' allegation of prosecutorial

misconduct for submitting false testimony. On direct examination, Detective Rodriguez testified

that he interviewed the three children, and the interviews were audio-videotaped.  D.E. 12-35 at 8 ("3T").  The oldest juvenile, a female, said she observed a male masturbating in a green vehicle. *Id.*  On cross-examination, defense counsel elicited Detective Rodriguez's testimony that Z.P. said her brothers told her the man had no pants on.  *Id.* at 47.  Counsel then asked Detective Rodriguez "would it be fair to say that you probed [Z.P.] further about her ability to observe the penis of the suspect who was in the car?"  *Id.* at 47-48.  He responded, "That question came up, yes."  *Id.*  On redirect examination, the prosecutor asked Detective Rodriguez whether the children appeared to be embarrassed about the questions they were being asked.  *Id.* at 56.  He stated "they refused to name the body parts specifically."  *Id.*  He also testified that each of the children said the man had no clothes on, and that he was masturbating.  *Id.*

The state court record supports the PCR court's determination that the prosecutor did not elicit false testimony or impermissible inferences from Z.P. or fail to correct testimony that was contrary to her out-of-court statement.  The Court will **DENY** the prosecutorial misconduct claim in Ground One(a) of the Petition because the state courts' determination of the claim did not involve an unreasonable determination of the facts, and was not contrary to, nor did it involve an unreasonable application of *Napue*.

### 2. Ground One(b)

In Ground One(b), Epps asserts the trial court's admission of Rule 404(b) prior-acts evidence violated his right to due process.  Pet. at 6a.  Epps was charged with masturbating in front of three children on May 2, 2013.  *Id.* at 6.  On direct examination, the prosecutor asked Z.P. whether she had ever before seen the man who was masturbating that day and Z.P. said no.  *Id.*  This was inconsistent with Z.P.'s prior out-of-court statement.  *Id.*  The prosecutor then impeached Z.P. with her prior inconsistent statement.  *Id.* at 6(a).  This resulted in the jury hearing Z.P. had

seen the defendant before in a different car.  *Id.*  The prosecutor argued the evidence was offered for the purpose of identity and requested a limiting instruction.  *Id.*

Epps contends this "prior-acts testimony" was unsworn hearsay and the State failed to move before trial "to introduce proof of any collateral acts."  *Id.*  Epps did not contest being in the area on that day.  *Id.*  He contends his identity was not at issue until the 404(b) evidence was admitted.  *Id.*  Furthermore, Epps contends the State knew he was incarcerated for an unrelated matter from September 2010 to December 2, 2012.  *Id.*  Epps implies the State knew Z.P.'s prior-acts testimony was impossible.  *Id.*  Therefore, the prior-acts evidence could not strengthen Z.P.'s identification.  *Id.*  To establish prejudice, Epps asserts the prosecutor, in closing argument, told the jury that Z.P. saw the defendant following her around for at least a year prior to the date of the incident.  *Id.* at 6(b).  Epps further claims that the prosecutor, by arguing for an aggravating factor at sentencing, tacitly admitted that the "404(b) impeachment evidence" was submitted to imply the prior incidents had caused the children to fear walking home from the bus.  *Id.*

In opposition, Respondents contend the prior-acts evidence was elicited exclusively by defense counsel on cross-examination to advance a misidentification defense.  Answer at 16.  The prosecutor objected, but the objection was overruled.  *Id.* at 17.  Defense counsel asked Z.P. whether she had seen a man in a red Jeep masturbating during the year prior to the May 2, 2013 incident.  *Id.*  Z.P. testified that she had seen the man about four times, and that some of those times he did not have pants on and was masturbating, always in a red Jeep.  *Id.* at 17-18.  The prosecutor requested a 404(b) limiting instruction, but defense counsel objected, and none was given.  *Id.* at 18.  Respondents note that on direct appeal, the Appellate Division found Epps was precluded by the doctrine of invited error from arguing a limiting instruction should have been given.  *Id.*

In support of his federal due process claim in Ground One(b), Epps argued in his reply brief that "conviction upon a charge not made would be a sheer denial of due process."  Reply at 9.[8]

> *a.    State court determination*

On direct appeal, Epps exhausted the federal claim in Ground One(b) by asserting:

> Z.P. testified that defendant masturbated before her on four prior occasions in 2012.  Because this uncharged conduct was virtually identical to the conduct underlying the charged offenses, the trial court had an obligation to instruct the jury that it could not consider the allegations as proof that defendant had a propensity to act inappropriately in front of children, and therefore, was more likely to have committed the charged offenses.  The failure to issue this instruction denied defendant a fair trial, and demands reversal of the convictions.  U.S. Const., amends IV, XIV….

D.E. 12-7 at 7 ("Brief and Appendix on Behalf of Defendant-Appellant").

The Appellate Division held the claim that the trial court erred by failing to give a limiting instruction claim was barred by the invited error doctrine.  *State v. Epps*, No. A-4049-14T1 (slip. op, at *7).  This is the highest reasoned state court determination of the claim, where the Appellate Division explained:

> Defendant pursued a defense premised on the proposition the children mistook him for a predator who pursued them in the past.  Defendant objected to the State's proposed 404(b) limiting instruction.  Now, disappointed in the trial's outcome, he argues the ruling he sought was erroneous.  Defendant invited the ruling.  He is now precluded from arguing the ruling was both erroneous and grounds for a new trial.

*Id.* at 8-9.

---

[8] Epps cites to *Thompson v. City of Louisville*, 362 U.S. 199, 206 n.12 (1960) (quoting *DeJonge v. Oregon*, 299 U.S. 353, 362 (1937); *Cole v. Arkansas*, 333 U.S. 196, 201 (1948).  None of these cases involved admission of prior-acts, crimes or wrongs at trial.

b.    *Analysis of Ground One(b)*

State court evidentiary rulings and jury instructions are subject to analysis under the Fourteenth Amendment Due Process Clause. *Estelle v. McGuire*, 502 U.S. 62 (1991). A habeas court, however, may not consider whether the ruling or instruction complied with state law. *Id.* at 71. The only question of due process is whether "the introduction of the challenged evidence" and "the jury instruction as to its use "so infused the trial with unfairness as to deny due process of law." *Id.* at 75 (cleaned up). The challenged jury instruction must involve more than an error, it must violate "some constitutional right" when viewed in terms of the instruction as a whole and the trial record. *Id.* at 72.

The Appellate Division denied this claim based the state law doctrine of "invited error,"[9] but this Court must determine whether admission of the evidence, and the failure to give a limiting instruction, deprived defendant of a fundamentally fair trial.

In summation, defense counsel argued, "I want you to believe the children because if you do believe the children they weren't seeing Eric Epps in May and June any time in 2012 because where was Eric Epps, ladies and gentleman? He was in State Prison." D.E. 12-36 at 30 ("4T"). Defense counsel argued that a man who looked like Epps had made Z.P. uncomfortable by masturbating and exposing himself on prior occasions. *Id.* at 33. Epps' resemblance to the man caused Z.P. to obtain Epps' license plate number on May 2, 2013. *Id.* Epps was so flabbergasted by the charge that he insisted on taking the stand to deny it. *Id.* at 34. Defense counsel suggested the children were simply "mistaken and confused" and there was more than reasonable doubt in the evidence. *Id.*

---

[9] *Epps*, No. A-4094-14T1, slip op., at *7 (N.J. Super. Ct. App. Div. June 8, 2017).

In the State's summation, the prosecutor focused on the witnesses' descriptions of what they saw on May 2, 2013 and on impeaching Epps' credibility based on his own testimony. *Id.* at 40-53. Under the totality of these circumstances, it would have served little purpose to instruct the jury that the "prior-acts" could not be considered as evidence of defendant's propensity to masturbate in front of children. It was clear the evidence was submitted by the defense to show mistaken identity and was not offered by the prosecution to establish propensity. To that end, the jury was instructed, in pertinent part:

> The defendant, Eric Epps, as part of his general denial of guilt contends that the State has not presented sufficient reliable evidence to establish beyond a reasonable doubt that this defendant is the person who committed the crime.

> The defendant has neither the burden nor the duty to show that the crime, if committed, was committed by someone else or to prove the identity of that other person. You must determine, therefore, not only whether the State has proved each and every element of the offense charged beyond a reasonable doubt, but also whether the State has proven beyond a reasonable doubt that this defendant is the person who committed it.

> The State has presented testimony of [Z.P.] and [O.P.]. You will recall that these witnesses identified the defendant in court as the person who committed the alleged sexual assault, lewd acts and endangering the welfare of children by sexual acts.

> The State also presented testimony that on a prior occasion [Z.P.] identified the defendant as the person who committed these offenses. According to the witnesses, their identification of the defendant was based upon the observations and perceptions that they made of the perpetrator at the time the offense was being committed.

> It is your function to determine whether the witness' identification of the defendant is reliable and believable or whether it was based on a mistake or any other reason is not worthy of belief. You must decide whether it is sufficiently reliable evidence that this defendant is the person who committed the offenses charged.

4T at 65-66.  The jury was further instructed on the need to carefully scrutinize eyewitness identification because research showed risks of mistaken identification.  *Id.* at 66-67.  Finally, the trial court read the Indictment to the jury.  *Id.* at 77.  The jury was instructed that the charged conduct was alleged to have occurred on May 2, 2013, in East Orange, New Jersey.  *Id.*  Relevant to Epps' claim that Z.P.'s out-of-court statement indicated she had told the detectives she had not seen Epps' private part, the jury was instructed:

> The State is not required to prove that [the three child witnesses] actually observed or witnessed the sexual contact; rather, the State must prove that the alleged sexual contact occurred in the view of [the three child witnesses].
>
> In the view of is defined as within the victim's field of vision.  Field of vision is not limited to the visual direction in which the child is focused upon at the particular time when the alleged sexual contact is said to have occurred.
>
> Field of vision includes the area that the child was capable of viewing.  The State must prove beyond a reasonable doubt that [the three child witnesses] were present.

*Id.* at 80.

Taking into account the totality of the circumstances, including the trial testimony, summations, and jury instructions, the jury likely determined the case based on its proper weighing of the credibility of the children's identification of Epps and descriptions of what they saw on May 2, 2013.  Therefore, admission of the 404(b) evidence without a limiting instruction did not deprive Epps of a fair trial.  The Court will **DENY** the due process claim in Ground One(b) because the state courts' determination of the claim did not involve an unreasonable determination of the facts and was not contrary to, nor did it involve an unreasonable application of the due process standard in *Estelle*.

21

### C.    Ground Two of the Petition

In Ground Two of the Petition, Epps alleges:

> Petitioner (Epps) Was Harmed By The Failure Of The Trial Court To Conduct Pretrial Hearings To Determine The Probability, Reliability, And Admissibility Of Other-Crime-Evidence; Conduct A Rule 403 Balancing Or Limit The Jury's Consideration Of This Same 404(b) Evidence.

Pet. at 8.

Epps notes that he raised the issue of the trial court's failure to give a 404(b) limiting instruction on direct appeal, but his appellate counsel refused to assert an additional claim based on the lack of pretrial hearings on admissibility of the 404(b) evidence. *Id.* at 8. Epps, therefore, raised the pretrial hearing issue through an ineffective assistance of appellate counsel claim in the PCR court. *Id.*

Respondent notes the PCR court found the claim was procedurally barred by N.J. Ct. R. 3:22-4(a) because the claim could have been raised on direct appeal. Answer at 34. Respondent further argues Petitioner has not established cause and prejudice or fundamental miscarriage of justice to excuse procedural default. *Id.* at 35.

In Reply, Epps concludes the trial court "could not have properly weighed the prejudicial impact of the [404(b)] evidence" without reviewing the children's out-of-court statements. Reply at 21.

### 1.    *State Court determination*

The Appellate Division affirmed the PCR court's procedural bar of this claim under N.J. Ct. R. 3:22-4 without discussion. *Epps*, No. A-5692-18, slip. op. (N.J. Super. Ct. App. Div. Mar. 10, 2021). The Court, therefore, looks through to the PCR court's decision for habeas review of the claim. The PCR court held:

> Epps claims that no pre-trial hearings were conducted to determine the probability of reliability, trustworthiness, and admissibility of the three child witnesses out-of-court statements. As a result, "the totality of the circumstances" was never developed. Epps did not raise this issue on appeal when given the chance, and thus it is barred by R. 3:22-4(a). Even assuming this claim is not barred, Epps provides no specific examples of which statements should have been excluded as hearsay, why the three witnesses were not credible to testify, or how either would have adversely affected his case. Absent any proofs of these claims, Epps cannot establish any prejudice, and his argument is without merit.

*Epps*, Indictment No. 14-02-0397I, slip op., at *9 (N.J. Super. Ct. Law Div. June 7, 2019).

> 2.    *Analysis*

The issue of the trial court's failure to give a limiting instruction was raised in the state courts and discussed in Ground One(b), *supra*. The issue is whether Epps' claim that he was prejudiced by the trial court's failure to conduct pretrial evidentiary hearings is procedurally defaulted. The PCR court plainly stated this claim was barred by N.J. Ct. R. 3:22-4(a), which provides, in relevant part:

> First Petition for Post-Conviction Relief.
>
> Any ground for relief not raised in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule….[10]

N.J. Ct. R. 3:22-4(a). If the procedural bar was an independent and adequate state ground for relief, the Court may not consider the merits of Epps' due process challenge to the trial court's failure to conduct a pretrial evidentiary hearing. *Ross*, 118 F.4th at 565.

---

[10] There are exceptions to the Rule where the factual predicate for a ground for relief could not have been discovered earlier, enforcement of the bar would result in fundamental injustice, or if denial of relief would be contrary to a new rule of constitutional law under the Constitution of the United States or New Jersey. N.J. Ct. R. 3:22-4(a)(1-3).

The Third Circuit has held N.J. Ct. R. 3:22-4 provides an independent state ground for relief. *Cabrera v. Barbo*, 175 F.3d 307, 313 (3d Cir. 1999). A procedural rule is an adequate state ground for relief where it speaks in unmistakable terms and is applied in a consistent and regular manner in the vast majority of the cases. *Id.* In *State v. Preciose*, the New Jersey Supreme Court stated "the procedural bars imposed by Rules 3:22-4, 3:22-5, and 3:22-12 may be asserted to preclude post-conviction relief[.]" The exceptions to the rule, however, should be interpreted broadly "to address meritorious issues." *Id.* New Jersey courts, therefore, regularly impose a procedural bar under N.J. Ct. R. 3:22-4(a), but only when none of the exceptions to the rule are met. *State v. Nash*, 212 N.J. 518, 545-46 (2013).

Here, the PCR court did not discuss whether any of the exceptions to the rule were applicable. Under the circumstances, the Court cannot conclude the procedural bar of this claim was based on an adequate state ground, a rule that is applied in a consistent and regular manner. The Court, therefore, will review the PCR court's alternative finding that the claim lacked merit.

As with Ground One(b), the clearly established Supreme Court holding that governs state court evidentiary rulings is whether "the introduction of the challenged evidence … so infused the trial with unfairness as to deny due process of law." *Estelle*, 502 U.S. at 75 (cleaned up). For the same reasons discussed in Ground One(b), *supra*, under the totality of the circumstances, the trial court's admission of prior-acts evidence did not infect the trial with fundamental unfairness. The Court will therefore **DENY** Ground Two because the state courts' determination of the claim did not involve an unreasonable determination of the facts and was not contrary to, nor did it involve an unreasonable application the due process standard in *Estelle*.

24

### D.    Ground Three of the Petition

In Ground Three of the Petition, Epps argues:

> Trial Counsel Was Ineffective And Denied Petitioner The Right To A Complete Defense By:
>
> > • Failing To Provide Timely Discovery And Review It With Petitioner ["Ground Three(a)"];
> >
> > • Failing To Challenge The State's Impermissible And Prejudicial Propensity 404(B) Evidence ["Ground Three(b)"];
> >
> > • Failing To Challenge False And Ambiguous Evidence That Supported Elements Of Sexual Assault ["Ground Three(c)"];
> >
> > • Failing To Produce A Witness In Petitioner's Favor ["Ground Three(d)"][.]

Pet. at 9.

#### 1.    *Ground Three(a)*

In support of Ground Three(a), Epps asserts he first learned of the charges against him in July 2013.  *Id.* at 9.  After failed attempts to obtain discovery from his assigned counsel, he contacted the First Assistant Public Defender in June 2014.  *Id.*  He was not provided with the three statements of the witnesses until October 30, 2014.  *Id.*  Epps contends this left him unprepared to address the inconsistencies in the evidence.  *Id.*

Respondents oppose relief on Ground Three(a) because Epps received all discovery by the time of his November 5, 2014 trial.  Answer at 28.  Moreover, Epps admitted that he spoke with his trial counsel on six occasions prior to trial.  *Id.*  He did not establish how he was prejudiced. *Id.* at 28-29.  Epps did not address Ground Three(a) in his reply brief.

### a.    State court determination

The Appellate Division affirmed the PCR court's order denying relief.  *State v. Epps*, No. A-5692-18, slip op., at *10 (N.J. Super. Ct. App. Div. Mar. 10, 2021).  The Appellate Division held "[w]e are satisfied the PCR court's denial of the petition was supported by the credible evidence in the record.  Defendant did not demonstrate trial counsel was ineffective under the <u>Strickland</u>-<u>Fritz</u> test." *Id.*  The Court, therefore, looks through to the reasons the PCR court rejected this claim.

> Epps was surely aware that the bulk of the State's case rested on the testimony of the three child witnesses. Defense counsel, in consultation with Epps, formulated a strategy of cross-examining the witnesses to show mistaken identity.  Furthermore, as the State points out, this strategy was at least partially successful, as Defendant was acquitted on some of the charges.  Epps has failed to establish his claim of ineffective assistance of counsel under this argument.

*Epps*, Indictment No. 14-02-0397I, slip op. at *13 (N.J. Super. Ct. Law Div. June 7, 2019).

### b.    Analysis

Each of the ineffective assistance of counsel claims raised in Ground Three of the Petition is governed by the Supreme Court's holding in *Strickland v. Washington*, 466 U.S. 668 (1984).  To succeed on an ineffective assistance of counsel claim, a petitioner must establish two elements: (1) counsel's performance was deficient; and (2) counsel's deficient performance "prejudiced the defense." *Id.* at 687.  "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Id.*  [T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.  Counsel provides effective assistance by applying the skill and knowledge required to render the trial a reliable adversarial testing process." *Id.*  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  "Judicial scrutiny of counsel's

performance must be highly deferential . . . [and] every effort be made to eliminate the distorting effects of hindsight[.]" *Id.* On habeas review under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105 (cleaned up).

Even a professionally unreasonable error by counsel "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. "[A]ny deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692-93. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The error must sufficiently "undermine confidence in the outcome." *Id.*

The PCR court determined Epps must have known about the statements of the three child witnesses before trial, because defense counsel formulated a strategy with Epps to cross-examine the witnesses to show mistaken identity. In *Strickland*, the Court recognized defense counsel has a duty "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution." *Id.* at 688. Epps acknowledges he met with counsel six times prior to trial. Verified Pet. for PCR Relief ¶ 10. Defense counsel obtained a stipulation from the State as to the dates Epps was in prison. 4T at 31. Epps obviously communicated with counsel in advance of trial to formulate his defense of mistaken identity, knowing what the witnesses had said in their recorded statements. The PCR court's finding that counsel was not ineffective by failing to produce all discovery material to Epps before trial is reasonable. The Court, therefore, will **DENY** Ground Three(a) because the state courts' determination of the claim did not involve an unreasonable determination of the facts and was not

contrary to, nor did it involve an unreasonable application of the ineffective assistance of counsel standard in *Strickland*.

### 2.    Grounds Three(b) and (c)

In Ground Three(b), Epps asserts his trial counsel was ineffective "by failing to challenge the State's impermissible and prejudicial propensity 404(b) evidence[.]" Pet. at 9.  In Ground Three(c), he contends his counsel was ineffective by "failing to challenge false and ambiguous evidence that supported elements of sexual assault." *Id.*  In support of these claims, Epps states his "trial counsel's cross-examination of Z.P. elicited evidence proving that Petitioner had stalked and sexually assaulted her in the year prior to the date of the charged offense." *Id.* at 9(a).  Epps further alleges there were inconsistencies in Z.P.'s testimony that his counsel failed to bring to light. *Id.*

In opposition to Ground Three(b), Respondents note it was defense counsel who questioned Z.P. about prior-acts evidence to show mistaken identity.  Answer at 30.  Epps testified he was in prison, therefore, Z.P. could not have seen him masturbating in a red vehicle on prior occasions, and he never owned a red vehicle.  *Id.*

### a.    State court determination

The Appellate Division's opinion affirming the PCR court decision was the highest reasoned state court determination of this claim.

> It is clear from our review of the transcript that defense counsel extracted Z.P.'s prior observations during her cross-examination. The testimony was designed to show that Z.P. claimed to have seen defendant in two different vehicles and to question her identification of defendant on the day in question.  The lengthy cross-examination about the details of the prior encounters was clearly designed to create doubt about Z.P.'s version of the events for which defendant was charged.

> Indeed, when defendant testified, counsel stipulated he was in prison for a period of the time Z.P. claimed to have seen him masturbating in a red Jeep and he never owned a red vehicle.
>
> We are satisfied defense counsel was not deficient in her use of this strategy to weaken Z.P.'s testimony. Moreover, if defense counsel had allowed a Rule 404(b) instruction, the court would have in effect advised the jury that the defendant had performed the described acts. That would have controverted the defense strategy of misidentification.
>
> During its deliberations, the jury requested a playback of Z.P.'s testimony. And, it acquitted defendant of two of the endangering charges. Therefore, defendant cannot satisfy the second Strickland prong, that there was any error so serious as to lead to an unjust result. 466 U.S. at 694.

*Epps*, No. A-5692-18, slip op., at *8-9 (N.J. Super. Ct. App. Div. Mar. 10, 2021).

> b.    *Analysis*

The trial transcript confirms the Appellate Division's finding that it was defense counsel who elicited "Z.P.'s prior observations," referring to Z.P.'s testimony that she saw Epps in a red Jeep on prior occasions, and that he was naked or masturbating. 1T at 79-102. Counsel, therefore, was not ineffective for failing to object to propensity evidence elicited by the State. Epps also claims his trial counsel elicited Z.P.'s testimony that "proved" he had stalked and assaulted Z.P. in the prior year. The Appellate Division correctly found the defense strategy was to suggest a misidentification for the charged conduct, based on a mistaken belief Epps was the same person involved in uncharged conduct. 4T at 30-53. The Appellate Division found defense counsel's strategy was not deficient.

The issue on habeas review is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105. Based on Epps' testimony, the stipulation that he was in prison most of the year when Z.P. claimed to have seen him naked or

masturbating on prior occasions, the defense strategy was reasonable, and counsel's performance was not constitutionally deficient.

As a final point, Epps again raises the issue of his counsel's failure to cross-examine Z.P. about her prior statement, where she allegedly told detectives she could not see Epps' private part. As discussed in Ground One(b), *supra*, the state courts did not directly address the issue, and Z.P.'s prior statement is not in the state court record. Even if the statement was in the record, Epps could not establish *Strickland* prejudice based on his conviction for sexual assault. The trial court instructed the jury that under N.J.S. § 2C:14-2(b), it was not necessary that a child under the age of thirteen view the sexual contact, it is enough if the sexual contact was in the child's field of vision. 4T at 78-80. Z.P. testified she saw Epps close up on May 2, 2013, and he was sitting in his car with the front windows rolled down, he was not wearing pants, and he was playing with himself, which she also described as masturbating. Calling into doubt whether Z.P. actually saw his "private part" would not have prevented the jury from finding the sexual contact was within Z.P.'s field of vision. The failure to cross-examine Z.P. on this issue did not undermine the outcome of the trial. The Court will **DENY** Grounds Three(b) and (c) because the state courts' determination of the claim did not involve an unreasonable determination of the facts and was not contrary to, nor did it involve an unreasonable application of the ineffective assistance of counsel standard in *Strickland*.

### 3.    *Ground Three(d)*

In Ground Three(d) of the Petition, Epps contends his counsel was ineffective by failing to produce a witness in his favor. Pet. at 9. The witness was his fiancée, Nicole Cohen, who could have corroborated "some of his testimony" and enhanced his credibility. *Id.* at 9(a). Cohen

submitted an affidavit in support of Epps' PCR petition.  D.E. 5 at 28-29 ("Affidavit of Nicole Cohen").

In opposition to Ground Three(d), Respondents contend Cohen's testimony did not have a tendency to prove or disprove any fact of consequence.  Answer at 32.  Defense counsel's decision not to call Cohen as a witness did not prejudice the outcome of the trial.  *Id.*  Epps responded that Cohen knows the type of clothing and footwear he owned, what he was wearing on May 2, 2013, and she was familiar with his routine practices.  Reply at 26-27.  She also knew the contents of the green truck, and that Epps did not own or have access to a red vehicle in the past.  *Id.* at 27.

### a.    State court determination

The highest reasoned state court determination of the claim in Ground Three(d) was by the PCR court.  The Appellate Division affirmed, stating "any remaining arguments not addressed are not of sufficient merit to warrant a written opinion."  *Epps*, No. A-5692-18, slip op., at *10 (N.J. Super. Ct. App. Div. Mar. 10, 2021).  The PCR court determined the following.

> Epps claims that trial counsel failed to call his girlfriend, who would have testified that Epps' routine was to drop her off and pick her up from work on a daily basis, clean his truck daily, that on the date in question Epps did pick her up and drop her off in time, and was wearing jeans, boots and a t-shirt when she saw him that day.  This testimony would have allegedly corroborated Epps' testimony at trial.
>
> . . .
>
> In this case, the girlfriend may testify that Epps picked her up and dropped her off on that occasion in accordance with a routine practice.  However, nothing in the girlfriend's testimony goes to where Epps was on the date and time of the alleged offense.  She was at work at the time of the offense and has no personal knowledge as to Epps' whereabouts or conduct during the commission of the offense.  As a result, Epps' girlfriends' testimony would not have been relevant.

*Epps*, No. A-5692-18, slip. op., at *13-14 (N.J. Super. Ct. App. Div. Mar. 10, 2021).

    *b.*  *Analysis*

  Prior to trial, defense counsel formulated a strategy knowing the witnesses' statements indicated Epps was alone and not wearing pants when they saw him in the green vehicle on May 2, 2013. Even if Cohen could have testified how Epps was dressed when he picked her up a short time later or what was in the green vehicle at that time, the evidence would still permit the jury to conclude Epps had not been wearing pants and was masturbating when the children claimed to have seen him earlier near the school bus stop. Counsel's failure to call Cohen as a witness was not deficient performance. The Court, therefore, denies Grounds Three(d) because the state courts' determination of the claim did not involve an unreasonable determination of the facts and was not contrary to, nor did it involve an unreasonable application of the ineffective assistance of counsel standard in *Strickland*.

## III. CERTIFICATE OF APPEALABILITY

  "[A] state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition." *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003) (citing 28 U.S.C. § 2253). A judge may issue a certificate of appealability ("COA") "only if the requirements of § 2253 have been satisfied." *Id.* at 336. "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This includes a showing "that the issues presented were adequate to deserve encouragement to proceed further." *Id.* (cleaned up).

For the reasons discussed above, jurists of reason would not find the denial of Epps' habeas claims debatable or wrong. The Court finds no reason that the issues presented are adequate to encourage appeal. The Court will not issue a COA.

## IV.    CONCLUSION

For the reasons stated above, the Court will **DENY** the Petition and **DENY** a certificate of appealability. An appropriate Order follows.

 2/25/2025
Date

Evelyn Padin, U.S.D.J.